## Hunter *versus* Moul.

98 13
131 240
131 241
98 13.
171 648
98 13
29 SC 387

1. The mere acceptance by a creditor from his debtor of the note of a third person, drawn to the creditor's order, in case of an antecedent indebtedness, must, in the absence of any special agreement, be deemed not as absolute payment but as conditional payment or the receipt of collateral security. The debtor remains liable for his own debt in the event of non-payment of the note.

2. Where a debtor thus transfers a note drawn to the creditor's order, but does not indorse it, he is not entitled to strict notice of dishonor, according to the custom of merchants, but can only escape liability by showing that the neglect of the holders to give him such notice has actually occasioned him loss or damage. If he can prove that he has sustained loss, he is then exempt from liability only to the extent of such loss.

3. The fact that the creditor, under the dishonor of the note, has exchanged it for other securities which also ultimately have turned out to be worthless, will not exempt the debtor from liability except to the extent that he can prove he has suffered damage by such exchange.

4. A., being a creditor of B., accepted from B. C.'s note drawn to A.'s order, not as absolute but as conditional payment of the debt, B. undertaking to stand for the note and see that it was paid, but not indorsing it. A. had the note discounted, but on maturity it was protested, and taken up by A. A few days after A. took from C. two drafts for the amount of the dishonored note, of which fact he notified B. On maturity, one of the drafts was paid and the other dishonored. In an action by A. against B., to recover that portion of the original indebtedness between them represented by the dishonored draft: *Held*, that the plaintiff, having been guilty of no negligence in failing to collect the note, and not having been shown to have occasioned loss or damage to the defendant by accepting the drafts in lieu thereof, was entitled to recover.

[Hunter *v.* Moul.]

May 4th, 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *York county.* Of May Term 1881, No. 122.

Assumpsit, by Conrad Moul against Andrew Hunter, to recover a balance due on a book account for goods sold. The action was commenced by foreign attachment, and service having been made on the garnishees, the defendant appeared and pleaded non-assumpsit, payment, and payment with leave, &c. The cause was referred to a referee under the provisions of the Act of April 9th 1868, Pamph. L. 780, who found in favor of the plaintiff. His findings of fact and conclusions of law are fully set forth in the opinion of this Court.

Exceptions filed by defendant to the referee's report were overruled by the Court, and the report confirmed, whereupon the defendant took this writ, assigning for error this action of the Court.

*Hay* (*Cochran* with him), for the plaintiff in error.— Moul's position was that of surety, by parol, for the payment of the Camp & Randall note for $900, held by Hunter as collateral security. Moul, as surety, was entitled to immediate notice of the non-payment of the note, in order that he might have the opportunity of paying the debt and claiming a return of the security in the same state in which it was at the time of the transfer. The failure by Hunter to give him such notice, and the conduct of Hunter, in giving time to Camp & Randall, and in taking from them other obligations for the note, discharged the surety. It is immaterial whether the proof shows that the surety sustained actual loss or not. It was sufficient that his rights and remedies were changed without his consent, and he himself placed in a different position from that which he occupied when he transferred the note as collateral security : Southwick *v.* Sax, 9 Wend. 122 ; Nexsen *v.* Lyell, 5 Hill, 466. Moreover, Hunter's conduct amounted to an absolute conversion and appropriation of the $900 note to his own use, and thereby extinguished his claim upon the defendant for its amount: Muirhead *v.* Kirkpatrick, 9 Harris 241 ; M'Lughn *v.* Bovard, 4 Watts 314; 2 American Leading Cases (4 ed.) 113, 114, 256 ; Lawrence *v.* M'Calmont, 2 Howard 426 ; Dayton *v.* Trull, 23 Wendell 345.

*John M. Young,* for the defendant in error.

Mr. Justice MERCUR delivered the opinion of the Court, October 3d 1881.

[Hunter v. Moul.]

This judgment was entered on the report of a referee. The important facts found by him are substantially these: Hunter was indebted, on book account, to Moul, in the sum of some $1,100 or $1,200. On being asked for payment he replied he had no money, but had the promise of a note of $900 from Camp & Randall, payable in four months, and that he would give that to Moul to get discounted and use the money. The latter answered that he did not want the note, but that Hunter should get it discounted and give him the money. To this Hunter replied he was a stranger and could not get it discounted; but that Moul should take the note and get it discounted, and he (Hunter) would stand for it and see it was paid. Moul assented to this. The note was made payable to him and sent to him. It was not indorsed by Hunter. Moul had it discounted at bank and received the proceeds. When it matured it was protested for non-payment and taken up by the defendant in error. In lieu thereof and soon thereafter, he took from Camp & Randall their two drafts of $450 each, payable at twenty and thirty days respectively, and wrote Hunter informing him of the fact, but received no answer. The draft first falling due was paid at maturity; the other was protested for non-payment, and Moul wrote Hunter informing him thereof. This draft remained in the hands of the defendant in error. Treating it as no payment he seeks to recover of the plaintiff in error, on the original account, a sum equal to the amount of the draft.

The contention is whether the circumstances under which the defendant in error took the note, or his subsequent action in relation thereto, compelled him to apply it as a payment on the account against the plaintiff in error. There was no express agreement to accept the note as payment, nor to give time for the payment of the account.

The referee found the note was not taken by the defendant in error as absolute payment of so much of the indebtedness of the plaintiff in error, and technically not as collateral security therefor; but inasmuch as paper so held has been called collateral by the courts, he treats it as such. He further found the defendant was guilty of no negligence in failing to collect the note, and that he did not so convert it to his own use as to bar his right to recover of the plaintiff in error.

The mere acceptance, from a debtor, of his own note or the note of a third person, in case of an antecedent indebtedness, is not a payment of the indebtedness. In the absence of a special agreement it must be considered as a conditional payment or as collateral security. The debtor continues liable for his own debt in the event of a failure of payment of the note thus given

or transferred: Leas *v.* James, 10 S. & R. 307; McGinn *v.* Holmes, 2 Watts 121; Weakly *v.* Bell, 9 Id. 273; McIntyre *v.* Kennedy, 5 Casey 448; Brown *v.* Scott, 1 P. F. Smith 357; League *v.* Waring & Co., 4 Norris 244.

When the transfer of a note is a conditional payment, it is necessary to inquire what the true condition was, and if not fulfilled by the person accepting it, what injury, if any, has resulted from the breach.

The cases are not in harmony as to the effect of a failure to present the note of the third person and give notice of its dishonor, when no injury therefrom has resulted to the debtor. We shall not attempt to review them, but refer to some which we think correctly rule this case. Great regard must be had to the character of the transaction. If the debtor indorse the note a more stringent rule prevails as to notice than if he transfer it by delivery only. When the guaranty is absolute that a specific act shall be done by another, it was said, in Vinal *v.* Richardson, 13 Allen 521, demand and notice need not be averred, although the want of them may be a defense on the ground of negligence to the extent of the resulting injury. One who has merely guaranteed it, but whose name is not on the bill or note, is not in general entitled to notice of non-payment: Chitty on Bills 498. So, on page 441, it is further said, "In general, if the bill or note be given as collateral security, and the party delivering it were no party to it, either by indorsing or transferring it by delivery when payable to bearer, but merely caused it to be drawn or indorsed or delivered over by a third person as a security, or has merely guaranteed the payment, it has been considered that he is not, within the custom of merchants, an indorser or party to it, so as to be absolutely entitled to strict regular notice, nor discharged from his liability by the neglect of the holder to give him such notice, unless he can show by express evidence, or by inference, that he has actually sustained loss or damage by the omission." The reason is, when a person delivers over a bill to another without indorsing it, he does not subject himself to the obligation of the law merchant, and cannot be sued on the bill; as he does not subject himself to the obligation he is not entitled to the advantages. If he can prove he has sustained damages, then he is discharged only to the extent of such actual damages: Id. The guarantor of a note does not stand in the same situation as parties to it; his obligation is in the nature of an insurance of the debt, and there is no need of the same proof to charge him as if he were an indorser. The necessity of demand in order to charge the indorser of a bill is solely founded on the custom of merchants, and applies only to actions against the indorser on the bill it-

[Welchans v. Shirk.]

self; it does not apply when the guarantor is not an indorser: Gibbs v. Cannon, 9 S. & R. 201; Overton v. Tracey, 14 Id. 311; McLughn v. Bovard, 4 Watts 308.   The law is clearly stated in 2 Parsons on Bills 184, where it said if paper be transferred by delivery only as security for a pre-existing debt, and it is dishonored while in the hands of the transferee, it affects in no way the debt it was intended to secure.   The original liability remains what it was, and upon dishonor of the paper it is not even necessary to give him notice thereof as an indorser; but the debtor may show in defense any injury he has sustained by the actual laches of the creditor.   Nor does the fact that the collaterals were exchanged for other securities which were ultimately found worthless, change the liability, unless it is further shown that a loss resulted to the owner of the collaterals by reason of such exchange: Girard Fire and Marine Ins. Co. v. Marr, 10 Wright 504.

The name of the plaintiff in error was neither in nor on the note; it was not payable to bearer; he was in no sense a party to it.   With a view that the proceeds, when paid, should dis charge an amount of his indebtedness equal thereto, he caused it to be made payable to his creditor and put it into his hands, through no fault of that creditor it was not paid.   It is not shown that it could at any time have been collected of the makers.   The acceptance from the makers of their two drafts was no payment, but did result in the payment of one-half the amount.   Having sustained no loss or damage by any act of his creditor, the plaintiff in error has no just cause of complaint at being still held liable for his indebtedness.   The creditor was not obliged to give up the unpaid draft before bringing this suit.   It is not shown to be of any value; but if valuable, he has a right to retain all the securities in his hands until he obtains satisfaction of the debt due him.

Judgment affirmed.